## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MIDDLESEX COUNTY HEALTH DEPARTMENT, | : | |
| | : | Civil No. 08-4547 (AET) |
| Plaintiff, | : | |
| v. | : | **RE-ISSUED OPINION** |
| CONSOLIDATED RAIL CORPORATION, a/k/a/ CONRAIL, | : | |
| Defendant. | : | |

RECEIVED

JAN - 9 2009

AT 8:30_____M
WILLIAM T. WALSH
CLERK

### THIS OPINION IS BEING RE-ISSUED FOR THE PURPOSES OF PUBLICATION
Typographical corrections entered have no bearing
on the holding and dicta contained herein

THOMPSON, U.S.D.J.

This matter comes before the Court upon Defendant's Motion to Dismiss [9] pursuant to

Fed. R. Civ. P. 12. The Court has decided the instant motion based upon the submissions of the

parties, without oral argument, pursuant to Fed. R. Civ. P. 78. For the reasons stated below,

Defendant's motion is granted.

### BACKGROUND

A. Procedural Background

On July 24, 2008, Middlesex County Health Department ("Middlesex") filed suit in the

Superior Court of New Jersey, Law Division, Middlesex County, against Consolidated Rail

Corporation ("Conrail") alleging a variety of infractions of air pollution policy, pursuant to the information contained herein, based on alleged violations of the New Jersey Air Pollution Control Act ("NJAPCA").  On September 10, 2008, Defendant filed notice of removal [1] to this Court pursuant to 28 U.S.C. § 1446 (d).  On October 6, 2008, Defendant filed the instant motion.

B. Factual Background

Plaintiff's allegations arise out of four separate incidents over the course of fifteen months.  On November 6, 2006, Middlesex notified Conrail that an investigation conducted on October 26, 2006, of three "idling" locomotives in Woodbridge, New Jersey, belonging to Conrail emitted diesel exhaust fumes.[1]  Middlesex notified Conrail that these emissions instigated a complaint from a private citizen, and that they violated New Jersey health laws which state "no person shall cause, suffer, allow or permit to be emitted into the outdoor atmosphere substances in quantities which shall result in air pollution."  N.J.A.C. 7:27-5.2(a).

On March 6, 2007, Middlesex notified Conrail that on March 1, 2007, in Edison, New Jersey, an "idling" diesel locomotive belonging to Conrail was found to be emitting exhaust fumes in a manner inconsistent with the New Jersey Administrative Code ("NJAC") governing emissions of fumes into the atmosphere.  Id.  This incident, too, instigated private complaints.

On August 27, 2007, Middlesex notified Conrail that on August 20, 2007, in Edison, New Jersey, three "idling" diesel locomotives belonging to Conrail were found to be emitting exhaust fumes in a manner inconsistent with the NJAC and which instigated a private citizen complaint.

---

[1]  Idling is the "operation of a locomotive's diesel internal combustion engine(s) used for locomotive motive power during which the engine is not used to move the locomotive." Air Quality Mgmt. Dist. R. 3501(c)(7) (February 3, 2006).

On February 19, 2008, in the fourth and final incident preceding this case, Middlesex notified Conrail that an investigation conducted on February 11, 2008, in Woodbridge, New Jersey, revealed an "idling" diesel locomotive belonging to Conrail emitting exhaust fumes in a manner inconsistent with the NJAC, and which resulted in a complaint from a private citizen.

DISCUSSION

A.  Applicable Law

    1.    The Interstate Commerce Commission Termination Act

Plaintiff's action is based on violations of New Jersey state law.  Plaintiff contends that state statutes regulating air quality extend to governing atmosphere emissions released from "idling" train locomotives.  N.J.A.C. 7:27-5.2(a).  To Plaintiff's contentions, Defendant argues Plaintiff's cause of action is preempted, and relies on Section 10501(b) of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 10101, et seq., and the Clean Air Act ("CAA"), 42 U.S.C. § 7401.  Specifically, Defendant argues both statutes address Plaintiff's claims and that Conrail's "idling" locomotives and any emissions caused by them are under the province of federal legislation, and preclude Plaintiff's attempts to seek remedy here under state law.

Defendant alleges Plaintiff has failed to state a claim and that this Court lacks jurisdiction to adjudicate this matter.  "Preemption under the Supremacy Clause of the federal Constitution may arise in several ways, i.e., (1) express preemption where the intent of Congress to preempt state law is clear and explicit; (2) field preemption where state law intrudes in an area that Congress has reserved for federal jurisdiction; and (3) conflict preemption, where enforcement of state law cannot be accomplished while simultaneously complying with federal law."  Friberg v.

-3-

Kansas City Southern Railway Co., 267 F.3d 439, 442 (5th Cir. 2001). See Louisiana Public Service Com'n v. F.C.C., 476 U.S. 355, 368-369 (1986).  Congress and the courts long have recognized a need to regulate railroad operations at the federal level.  Congressional authority under the Commerce Clause to regulate the railroads is well established, and the Supreme Court repeatedly has recognized the preclusive effect of all federal legislation in this area. City of Auburn v. U.S. Government, 154 F.3d 1025, 1029 (9th Cir. 1998).  The ICCTA has been recognized as "among the most pervasive and comprehensive of federal regulatory schemes." Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 318 (1981).  The common thread of these cases is evident: "there can be no divided authority over interstate commerce, and...the acts of Congress on that subject are supreme and exclusive." Id.  Consequently, state efforts to regulate commerce must fall when they conflict with or interfere with federal authority over the same activity. Id. at 319.

To address matters falling within the ICCTA's jurisdiction, Congress created the Surface Transportation Board ("STB").  The STB has jurisdiction over transportation over rail carriers and the tracks they use.  The remedies outlined in the STB "are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. §§ 10501(b)(1) and (2). Transportation is defined, broadly, as "a locomotive, car, vehicle...or any equipment of any kind related to the movement of passengers or property, or by both, by rail." 49 U.S.C. § 10102 (9). The STB's jurisdiction over rail transportation is exclusive. Id.  Not all areas of the STB's jurisdiction are subject to preemption; "the touchstone is whether the state regulation imposes an unreasonable burden on railroading." N.Y. Susquehanna & W. Ry. Corp. v. Jackson, 500 F.3d 238, 253 (3d Cir. 2007).

2.    The Clean Air Act

Congress has vested the federal Environmental Protection Agency ("EPA") with the authority to regulate emissions from locomotive engines under the CAA. 42 U.S.C. § 7401. With that authority, the EPA is granted exclusive jurisdiction to adopt and enforce the standards of mobile–and locomotive–emission controls.  Id.   Aside from the broad reach to regulate locomotive emissions, Congress has exercised this authority through many federal statutes and regulations.  For example, Congress has defined the manner in which locomotives must be shut down and the time frame in which this must be done.  73 Fed. Reg. 37123 (June 30, 2008). Furthermore, Congress considered damage done to locomotives if these locomotives were subject to repeated attempts to shut-off and restart.  Id.  Moreover, the rules and regulations of the EPA explain that state attempts to regulate this sphere of environmental legislation are preempted.  63 Fed. Reg. 18978, 1899 (April 16, 1998).

3.    Dismissal pursuant to Rule 12

A party may prevail on a challenge to subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) if the court in which the matter is brought lacks the authority to adjudicate the type of controversy involved in the action.  See Carlisle v. United States, 517 U.S. 416, 434-435 (1996). Had Defendant not raised the matter, "every federal court, whether trial or appellate, is obliged to notice want of subject matter jurisdiction on its own motion."  Things Remembered v. Petrarca, 516 U.S. 124, 132 n.1 (1995).

This Court may grant a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) if "accepting all the well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not

entitled to relief." Oatway v. Am. Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003) (citations omitted).

    B.    Analysis

As the Third Circuit noted in N.Y. Susquehanna & W. Ry. Corp., the touchstone of our inquiry must be whether "the state regulation imposes an unreasonable burden on railroading." N.Y. Susquehanna & W. Ry. Corp., 500 F.3d at 253. Middlesex is correct to note that there is a presumption against preemption for laws that regulate health and safety. For example, the Third Circuit found New Jersey state regulations governing facilities that deal with "transloading" of solid wastes were saved from preemption.[2]  N.Y. Susquehanna & W. Ry. Corp., 500 F.3d at 257. However, that case is distinguishable from the instant case. In N.Y. Susquehanna, the regulation at issue governed the "transloading" of solid wastes from truck to railcar. Id.

This case, by contrast, concerns railcars, the fumes they emit when idling and the tracks they travel. All of these areas are under the umbrella of federal regulatory authority. Here, Middlesex is without remedy due to explicit Congressional intent to preempt state regulation of an area historically given to federal authorities. Congress left unmistakable its powers to regulate the nation's railways. "The language of the statute could not be more precise, and it is beyond peradventure that regulation of [the rails] is under the exclusive jurisdiction of the STB." Friberg, 267 F.3d at 443.

Middlesex contends idling locomotives belonging to Conrail emitted fumes noxious to

_____

[2] "'Transloading' is a term of art in the bulk transportation industry. It means 'transferring bulk shipments from the vehicle container of one mode to that of another at a terminal interchange point.'" N.Y. Susquehanna & W. Ry. Corp. v. Jackson, 500 F.3d 238, 242 n.1 (3d Cir. 2007) (citations omitted).

the atmosphere and at a level prompting complaints from private citizens in the area.  Middlesex

argues that it is the designated agency under the New Jersey Environmental Protection Agency to

enforce state environmental regulations and to challenge Conrail's alleged infractions of

environmental policy.  However, in advancing this argument, Middlesex fails to cite statutory or

precedential support that overrides both the presumption of preemption in areas concerning

interstate commerce as well as the explicit statutory language within the EPA regulations

indicating preemption.  "An assumption of non-preemption is not triggered when the State

regulates in an area where there has been a history of significant federal presence." United States

v. Locke, 529 U.S. 89, 108 (2000).  Therefore, because Middlesex couches its cause of action in

an area preempted by federal legislation, Middlesex has failed to state a claim entitling it to

relief, pursuant to Fed. R. Civ. P. 12.

CONCLUSION

For the foregoing reasons and for good cause shown,

It is on this 16th day of December, 2008,

ORDERED that Defendant's Motion to Dismiss [9]  is GRANTED and the case is

closed.


s/ Anne E. Thompson

ANNE E. THOMPSON, U.S.D.J.